46 U.S. 96
 5 How. 96
 12 L.Ed. 66
 HENRY A. HALL, PLAINTIFF,
v.
WILLIAM SMITH.
 January Term, 1847
 
 1
 THIS case came up on a certificate of division from the Circuit Court of the United States for the District of Maryland.
 
 
 2
 The United States of America, District of Maryland, to wit:——
 
 
 3
 At a Circuit Court of the United States for the Fourth Circuit, in and for the Maryland District, begun and held at the city of Baltimore, on the first Monday in April, in the year of our Lord one thousand eight hundred and forty-four.
 
 
 4
 Present, the Honorable Roger B. Taney, Chief Justice of the Supreme Court of the United States; the Honorable Upton S. Heath, Judge of Maryland District; Z. Collins Lee, Esquire, Attorney; Thomas B. Pottenger, Esquire, Marshall; Thomas Spicer, Clerk.
 
 
 5
 Among other, were the following proceedings, to wit:—— HENRY A. HALL v. WILLIAM SMITH.
 
 
 6
 District of Maryland, Circuit Court of the United States, April term, 1844.
 
 
 7
 The declaration in this case contained counts, in the usual form, for money lent and advanced, money paid, laid out, and expended, and money had and received, and an averment that the defendant was a citizen of the State of Mississippi, and the plaintiff of the State of Maryland. Plea, non-as-sumpsit, and issue upon it. The suit was instituted July 3d, 1843.
 
 
 8
 At the trial of the case, the plaintiff offered in evidence the two notes hereinafter inserted, with the indorsements thereon, and further offered in evidence to prove that the defendant being indebted to a certain Philip Thornton in the sum of money hereinafter mentioned, the said Thornton brought suit against him in Baltimore County Court, in the State of Maryland, on the 18th of July, 1839; while the writ was in the hands of the sheriff, and before the service thereof on the defendant, it was agreed between Smith and the attorney of Thornton, that Smith should be permitted on his honor to go into an adjoining county to see his friends, to procure security in order to relieve himself from said suit. He went and returned; and on the 29th of July, 1839, in the State aforesaid, gave two promissory notes to Thornton, dated August 10th, 1839, one for $2,678.90, payable on the 1st of April, 1840, and the other for $2,669, payable on the 1st of June, 1840; both of which notes were indorsed by a certain James S. McCaleb and a certain James Kent, as securities for the said Smith; and upon receiving these notes, so indorsed, Thornton discontinued the suit against Smith. These notes were not paid at maturity, and were protested for non-payment; and in June, 1840, Thornton brought suit on both of them against McCaleb, the indorser, in Baltimore County Court, upon which he, McCaleb, was arrested, and being in the hands of the sheriff, he applied to a certain Richard Lemmon, of the city of Baltimore, to become his bail. McCaleb was the son-in-law of Henry A. Hall, the plaintiff, who resides in the State of Maryland, about forty miles distant from the city of Baltimore, and Lemmon being an intimate friend of the said Hall, and knowing McCaleb to be his son-in-law, agreed to become his bail, from the confidence he had that the plaintiff would save him harmless; and he entered bail accordingly in both of these suits.
 
 
 9
 That at the first interview Lemmon afterwards had with the plaintiff, the latter introduced the subject, and without waiting for any application from Lemmon, assured him that he, the plaintiff, would save him harmless; and Lemmon having entire confidence in his verbal promise, did not ask any written security. Pending these suits Smith paid part of one of the notes, and before judgment was obtained upon either of them, Hall paid the balance of the last mentioned note, and upon an agreement made with the attorney of Thornton, a suit by Philip Thornton v. Henry Hall, the plaintiff, was docketed by consent on the 7th of September, 1840, in the Circuit Court of the United States for the district of Maryland, and on the declaration was indorsed a direction to the clerk to enter judgment for the amount of the damages in the narration, to be released on payment of $2,669, with interest from the 1st of January, 1840, and costs, and stay of execution until the 1st of July, 1841; which was signed by the attorneys for the plaintiff and defendant. That, accordingly, at the next term of said court, in November, 1840, on the 4th day of the month, said judgment was entered, and the suits against McCaleb, in which Lemmon was bail, according to an arrangement between the counsel of Thornton, McCaleb, and Hall, were dismissed, having been countermanded on the 1st of September, 1840, in consequence of an agreement made between said parties, Thornton, McCaleb, and Hall, previous to said countermand, that said suit should be docketed by consent, and judgment confessed, as was afterwards done in the manner above stated.
 
 
 10
 The judgment was confessed in the Circuit Court, in order to create a lien upon the real estate of Hall, which being situated in a part of Maryland which was not within the jurisdiction of Baltimore County Court, it was supposed that a judgment in that court would not be a lien upon it.
 
 
 11
 Upon the confession of this judgment in the Circuit Court, the notes above mentioned were delivered to Hall by the attorney of Thornton; a part of this judgment was paid to the attorney of Thornton, by a draft of Smith in favor of McCaleb, upon a house in New Orleans, and the balance due upon it was paid by Hall on the 30th of June, 1841. James S. McCaleb died in the State of Mississippi, of which he was a citizen, in the summer of 1842, and letters of administration on his estate were afterwards, on the 28th day of November, in the year 1842, granted by the proper authority in that State to Jonathan McCaleb; and on the 20th of May, 1843, the administrator assigned to Hall, the plaintiff in this case, the notes aforesaid.
 
 
 12
 The notes, with the several indorements and assignments thereon, are as follows, to wit:——
 
 
 13
 $2,669
 
 
 14
 Baltimore, August 10th, 1839.
 
 
 15
 On the first day of January next, I promise to pay to the order of James S. McCaleb, twenty-six-hundred and sixtynine dollars, for value received, payable and negotiable at the Union Bank of Maryland.
 
 
 16
 WM. SMITH.
 
 
 17
 4th January, 1840.—J. G., N. P. Non-payment.
 
 
 18
 No. given.—H. &S.
 
 
 19
 Indorsements.—651. Wm. Smith, $2,669. January 1.
 
 
 20
 JAMES S. McCALEB,
 
 
 21
 JAMES KENT.
 
 
 22
 In consideration that the amount of the within note, with interest thereon, was paid by Henry A. Hall, Esq., in behalf of James S. McCaleb, deceased, the indorser thereon, now I do hereby assign to said Henry A. Hall, said note.
 
 JONA. McCALEB, Administrator of
 
 23
 May 20th, 1843.
 
 
 24
 JAMES S. McCALEB, deceased.
 
 
 25
 $2,678.90.
 
 
 26
 Baltimore, August 10th, 1839.
 
 
 27
 On the first day of April next, I promise to pay to the order of James S. McCaleb, twenty-six hundred and seventy-eight dollars 90/100, for value received, payable and negotiable at the Union Bank of Maryland.
 
 
 28
 WM. SMITH.
 
 
 29
 April 1.—Prot. non payment, 4th April, 1840.
 
 
 30
 Indorsed.—Union, 583. Wm. Smith, $2,678.90. April 1.
 
 
 31
 JAS. S. McCALEB,
 
 
 32
 JAMES KENT.
 
 
 33
 Baltimore, July 13th, 1840. $1,500. By cash, received of Jas. S. McCaleb, on account, the within fifteen hundred dollars.
 
 JNO. M. GORDON, Attorney for
 
 34
 P. THORNTON.
 
 
 35
 $400. July 24th.—By cash, $400. JOHN M. GORDON.
 
 
 36
 $200. By cash, two hundred dollars. August 3d, 1840.
 
 
 37
 J. M. GORDON.
 
 
 38
 I assign the within note to Henry A. Hall, for value received.
 
 JONATHAN McCALEB, Administrator of
 
 39
 May 20th, 1843.
 
 
 40
 JAMES S. McCALEB.
 
 
 41
 The defendant offered to give in evidence that Smith and McCaleb, the drawer and payee of the two notes given to Thornton, were citizens of the State of Mississippi at the date of the notes, and that McCaleb continued to be so until his death, and that Smith still continues to be so.
 
 
 42
 Upon this evidence the following questions occurred:——
 
 
 43
 1. Is the plaintiff entitled to recover of the defendant the money paid by plaintiff to Thornton, or any part of it, as being money paid for his (Smith's) use?
 
 
 44
 2. If the first question is answered in the negative, then can the defendant, upon the issue joined in this case, offer evidence that Smith and McCaleb were both citizens of Mississippi when the notes stated in the testimony were given in order to bar the plaintiff of his action in this court as assignee of said notes?
 
 
 45
 And the judges being opposed in opinion upon each of these points, they are, at the request of the plaintiff, ordered to be certified to the Supreme Court at their next session.
 
 
 46
 Upon this certificate the case came up to this court.
 
 
 47
 It was argued by Mr. Dulany, for the plaintiff, and by Mr. Giles and Mr. David Stewart, for the defendant.
 
 
 48
 Mr. Dulany.
 
 
 49
 As to the first question presented by the record, it cannot be denied that the money paid by Hall to Thornton was expended for the benefit of the defendant, Smith. It went 'pro tanto' to extinguish the debt due by Smith to Thornton; it was money, therefore, advanced for the use of Smith, and of which, in fact, he obtained the full benefit. What reason then can be alleged why an action for money laid out and expended for the use of Smith connot lie to recover it again on the part of Hall? The Circuit Court has jurisdiction over the subject-matter of such a suit, and over the parties; for Hall is a citizen of the State of Maryland, and Smith of the State of Mississippi.
 
 
 50
 But it is alleged that Smith became indebted to James S. McCaleb, on his, Smith's, failure to pay the two promissory notes, on each of which notes said McCaleb was indorser; that Smith and McCaleb were citizens of the same State; that, as such, McCaleb could not have sued Smith in the courts of the United States; and that, by the assignment of the notes to Hall, he was placed in the shoes of McCaleb, and could no more appear in the courts of the United States as plaintiff, to enforce payment of the notes against Smith, than McCaleb himself could have appeared for that purpose.
 
 
 51
 The principle that the Circuit Court of the United States has not jurisdiction, on account of the character of the parties, in a contest between citizens of different States, where the cause of action arises upon a debt assigned, and originally contracted between citizens of the same State, is fully admitted. But its application to the present case is denied. It is admitted that, when the assignor could not sue there, in an action on the debt assigned, the assignee is in no better situation than the assignor, although he may be a citizen of a different State from the original debtor.
 
 
 52
 In the case now under consideration the action is not instituted upon the notes assigned, but for money expended for the use of Smith, and upon his implied request. The money expended, which is the cause of action, was paid on the 30th of June, 1841. The notes were not assigned until the 20th of May, 1843. The cause of action, then, under the money counts of the declaration, arose long anterior to the assignments, and subsisted wholly independent of them; the notes, with the assignments upon them, being introduced in evidence to show in what manner the money paid by Hall inured to the benefit of Smith, and were therefore collateral to the true cause of action, and designed merely as links in the chain of evidence to support it.
 
 
 53
 The declaration shows that the suit is between citizens of different States, and clearly therefore within the general jurisdiction of the Circuit Court, unless it falls within the restrictive clause of the eleventh section of the judiciary act of 1789, ch. 20, which declares, that the Circuit Court shall not 'have cognizance of any suit to recover the contents of any promissory note, or other chose in action, in favor of an assignee, unless a suit might have been prosecuted in said court to recover the said contents if no assignment had been made.'
 
 
 54
 In Bean v. Smith and others, 2 Mason, 279, it is said, speaking of the above clause,—'It is perfectly clear that the statute never contemplated an exclusion of jurisdiction in cases where a negotiable instrument or chose in action was mixed up in the ingredients of the case; but where that chose in action constituted the sole cause of action, and the assignment the whole ground of the plaintiff's right.'
 
 
 55
 In the present case it is manifest that the assignment of the notes does not constitute the whole ground of the plaintiff's action; but, on the contrary, that the cause of action subsisted independent of, and anterior to, the assignments, and at and from the moment when the money was paid by the plaintiff to the attorney of Thornton, in discharge pro tanto of his claim against Smith. If this be so, then it is clear that the restrictive clause of the judiciary act, above quoted, does not exclude the jurisdiction of the Circuit Court over the parites and the subject-matter of this cause.
 
 
 56
 But it may be replied, that if the money advanced by Hall is regarded as the true cause of action, and not the assigned notes, then the plaintiff is not entitled to recover; because the debt of Smith, to which the money was applied, was paid without his request or consent, and was therefore a mere voluntary act, from which no cause of action can arise against him.
 
 
 57
 A consideration of the evidence in this case, and the relation of the parties, will, we think, show that this objection cannot be sustained. Smith was the drawer of both of the notes in favor of James S. McCaleb, who became the accommodation indorser, and who redelivered them to Smith, who, from his own accommodation, and to relieve himself from a threatened arrest, gave them to Thornton, to whom he was indebted, and at whose instance the writ agaist Smith had been issued. These notes were not paid at maturity, as they should have been, by Smith; in consequence of whose default writs were issued out of Baltimore County Court against James S. McCaleb, as indorser, under which he was arrested by the sheriff, and whilst in the hands of that officer applied to Mr. Lemmon to become his bail, who consented to do so, in the confidence that he would be indemnifed by the plaintiff, who was the father-in-law of the said McCaleb. Lemmon accordingly became bail for McCaleb, who was then released by the sheriff.
 
 
 58
 Afterwards, at the first interview Lemmon had with the plaintiff, he assured him that he, the plaintiff, would save him harmless for having gone bail for his son-in-law. Pending these suits Smith had paid part of one of the notes; and before judgment was obtained upon either of them Hall paid the balance of the other note. Suit was then docketed against Hall in the Circuit Court by Thornton, and judgment was confessed, to be released on payment of $2,669, with the interest from the 1st of January, 1840. The payment of the balance of the note by Hall, and the confession of the judgment aforesaid, was the fulfilment, on the part of Hall, of his agreement with Lemmon to save him harmless for having gone bail for McCaleb; the suits against him in Baltimore County Court being dismissed, upon the confession of the judgment by Hall in the Circuit Court, as had been previously agreed between the attorney of Thornton and Hall. At the same time that the judgment was confessed the notes above mentioned were delivered to Hall by the attorney of Thornton.
 
 
 59
 The argument upon the second question is omitted.
 
 
 60
 Mr. Stewart and Mr. Giles made the following points:——
 
 
 61
 1. That the plaintiff cannot recover of the defendant the amount of the payments so made, because, in making them, the plaintiff was a mere volunteer so far as the defendant was concerned.
 
 
 62
 2. That the plaintiff cannot recover upon the promissory notes referred to, because he claims title through an assignment made by Jonathan McCaleb, administrator of James S. McCaleb, the payee of the said notes, both of whom were citizens of the State of Mississippi, of which State the defendant was also a citizen.
 
 
 63
 3. That it was perfectly competent for the defendant, after the plaintiff had given the promissory notes in evidence under the declaration in this case, to rely under his plea, filed upon the defect of title in the plaintiff as assignee of the said notes, to recover in the Circuit Court.
 
 
 64
 Mr. Justice WAYNE delivered the opinion of the court.
 
 
 65
 Upon the trial of this cause in the Circuit Court, two points were made, upon which the judges differed in opinion; and it has been certified to his court, as is provided for in the sixth section of the act of 1802, entitled 'An act to amend the judicial system of the United States.' 2 Stat. at L., 159. From the evidence, we think that all the persons in this transaction became privies in the same contract to secure the payment of a debt due by the defendant to Thornton. The payment of it, therefore, by any one of them, other than the debtor, was a payment at his request, and an express assumpsit to reimburse the amount.
 
 
 66
 But suppose such a privity not existing between the parties, the evidence shows it also to be a case of the surety of a surety paying the debt of a principal, under a legal obligation, from which the principal was bound to relieve him. Such a payment is a sufficient consideration to raise an implied assumpsit to repay the amount, though the payment was made without a request from the principal. Tappin v. Broster, 1 Car. & P., 112; Exall v. Partridge, 8 T. R., 310; Child v. Morley, Id., 610.
 
 
 67
 We shall decide the first point certified to be answered in the affirmative, which makes it unnecessary to notice the second.
 
 ORDER.
 
 68
 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the District of Maryland, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this court for its opinion agreeably to the acts of Congress in such case made and provided, and was argued by counsel. In consideration whereof, it is the opinion of this court that the plaintiff in this case is entitled to recover of the defendant the money paid by the plaintiff to Thornton, as being money paid for his (Smith's) use. Whereupon it is now here ordered and adjudged by this court that it be so certified to the said Circuit Court.